## In re WEBB'S ESTATE.
### FAWCETT et al. v. MITCHELL et al.

No. 22271. Dec. 4, 1934.

McKeever, Elam, Stewart & McKeever, for plaintiffs in error.

Mauntel & Spellman, for defendants in error.

PER CURIAM. On the 9th day of January, 1929, petition was filed in the county court of Major county, Okla., for probate of the purported last will and testament of J. C. Webb, deceased, who was a resident of said county, and that said deceased left a will bearing date on or about the 2d day of June, 1928. Said will was duly set for hearing for probate and notice given as provided by law.

Thereafter E. W. Webb, a brother of said J. C. Webb, deceased, and Ida Mitchell, daughter of one J. R. Webb, brother of J. C. Webb, who died prior to the death of said J. C. Webb, filed their respective objections to the probate of said purported will, each alleging, in substance: First, that said will is not executed and attested as by law required and is wholly void; second, that said J. C. Webb never made any last will and testament but died intestate; and, third, that if the said J. C. Webb did execute said will, such execution was the result of undue influence, menace, and duress. The third ground was dropped entirely and the hearing proceeded upon the first two grounds, more especially the second ground, that the said J. C. Webb never made any last will and testament and his purported signature was a forgery, which became the sole issue in the case.

Upon hearing in the county court the will was denied probate, and the proponents of the will appealed the case to the district court of Major county, Okla., wherein it was heard de novo, and on the 25th day of October, 1930, upon final hearing, said district court of Major county denied the will to be admitted to probate on ground and for the reason that the purported will was not the genuine last will and testament of the said J. C. Webb, deceased, and the said district court remanded the case back to the county court of Major county, Okla., with instructions to deny the admission of the will to probate. Motion for new trial was duly filed, which being overruled, exceptions were taken and record for appeal made, and the case is

now before us upon petition in error with case-made attached, in which petition in error eight alleged errors are recited.

Plaintiffs in error have grouped them and they will be considered under two divisions as contained and submitted in their briefs, as follows:

First. First to sixth, inclusive, "Is the will offered that of J. C. Webb?"

Second. Seventh and eighth, "Did the court err in admitting or excluding evidence?"

As to the execution of the will, it presents solely a question of fact, and after what appears to have been a full and quite extensive hearing by the trial court, it was considered that the preponderance of the testimony showed that the purported signature could not be that of J. C. Webb and was a forgery. This court will weigh the .evidence on appeal from a judgment denying probate of the same and determine if such finding is reasonably supported.

At the outset permit us to say that, as requested by counsel, we have -carefully read the entire record and examined each and every exhibit attached. The evidence shows that neither attesting witnesses personally knew the said purported testator, had never seen him before nor since, and only met and were introduced by the attorney preparing said will at the time they were requested to sign as witnesses. The testimony of said two attesting witnesses (pages 36 to 45 and pages 46 to 54, respectively), in the case-made, shows that they had no knowledge as to who the man was who represented himself as J. C. Webb and who signed the instrument purporting to be the last will and testament of J. C. Webb. The testimony of the attorney (case-made, pages 125 to 136) likewise discloses that he did not know J. C. Webb personally and gives it only as his opinion that it was J. C. Webb from examination of a photograph submitted in the trial of the case. It is conceded by both sides that this purported will was signed some time in the morning between 9 and 10 o'clock. Now as opposed to the testimony of the attesting witnesses and attorney is Ida Mitchell, niece of the decedent, who testifies positively that about 8 o'clock or 8:30 June 2, 1928. her said uncle, J. C. Webb, came to the home of herself and husband. He complained of not feeling well and lay down on a bed part of the time. He remained with them until about 1 o'clock. She makes certain by reason of it being on Saturday, which was the regular sales-

day in Ringwood for that month, and her uncle gave her some tickets to turn in. She is corroborated by her husband in every respect, who states positively that on the morning of said June 2, 1928, from about 8:30 to 1 o'clock her uncle, the alleged testator, was in their home. This was exactly at the time when the three witnesses for the proponents claimed that he was in the office of the attorney, in Cherokee, Okla. Ida Mitchell knew her uncle well from childhood, had done his washing for him, and lived within three miles of his home. He had stayed frequently with her and died at her home on December 5th of that year. The testimony of the said Ida Mitchell and her husband is not impeached, and there does not appear to be any other testimony of proponents that throws any light on where the said J. C. Webb was during the morning of June 2, 1928. Considerable testimony is introduced establishing where the deceased was seen or spent the afternoon and evening, but that is not relevant; it being conceded the will was signed in the morning. The trial judge in commenting on the conduct and demeanor of the witness Ida Mitchell found no interest shown that appeared to bias her testimony in any way and she seemed to be clear and reasonable and her testimony positive and convincing. As against this testimony and that of her husband, we have the evidence of Mr. Talbot, the attorney, who did not know the man that approached him that morning to write the will. He was a stranger to him. He introduced himself to Mr. Talbot as J. C. Webb, and Mr. Talbot in turn introduced the two attesting witnesses to Mr. Webb at the time they witnessed his signature. The only proof, therefore, we have that it was the real J. C. Webb is the man's own statement who signed the will.

In addition there appears the testimony of two bankers who were familiar with the genuine handwriting of J. C. Webb. Both bankers, together with a handwriting expert, pronounce the signature to the will a forgery. They made comparison of the same with the genuine signatures in over a hundred exhibits, consisting of checks, legal papers, receipts, bills, etc., and say there are many and various dissimilarities on the will as compared to those which are admitted as genuine. Witnesses testified to various differences in the signatures. To refer to a few differences pointed out are the "J" in the genuine signature as compared to the "J" on the will which is connected with the "C" but is not on any of the exhibits; the "e" in Webb and both

"b's" are not like those on the disputed signature, and the customary upward trend of the genuine signatures, together with the slant and shading, all make it apparent, according to the witnesses, that there is quite a variance in the signature on the will and those admitted to be genuine. This, together with the testimony of the expert pointing out numerous other and different discrepancies, lead us to the conclusion that the judgment of the trial court is not against the weight of the evidence.

Plaintiffs in error cite Brooks v. Creger (In re Creger's Estate), 135 Okla. 77, 274 P. 30, 62 A. L. R. 690, decided by this court January 29, 1929, in support of their contention that the court erred in excluding certain testimony offered as to statements made by deceased with reference to a will. This case can hardly be considered in point or applicable to the present suit. In the Creger Estate, the proponents rely entirely upon a holographic will, and the court departs from the ancient rule of not permitting the statements made by the testator as to what he intended to do with his property to be admitted as evidence and that the latter rule was changed to admit declarations made prior to the executing of a will. In that case the entire will was charged to be a forgery, so that the intentions of the testator as he had expressed them in his lifetime were proper to be admitted in order to show the improbability that the testator would have written such a will as the alleged forged instrument purported to have been executed. In the case at bar the question of the contents of the will is not at issue. The only question is that the testator never signed the instrument which is now claimed he did sign or that the signature is a forgery, and nothing that he might have said would throw any light upon that question. In the Creger Estate Case, the contents of the will were in issue, but in the case at bar there is no attempt made to show what he intended to insert in his will, except, perhaps, in the testimony of Harry Webb, a beneficiary, who offered to testify to the terms of the will and that his uncle had told him as to what disposition he intended to make of his estate; but it was held in the said Creger Estate Case that proponent of contested will, who was beneficiary thereunder, is incompetent to testify regarding execution of will or any material fact connected therewith.

We, therefore, find no error of the trial court, and after weighing the evidence, this court concludes that the trial court was amply justified in rejecting the will, and its action in doing so is affirmed.

The Supreme Court acknowledges the aid of District Judge Enloe V. Vernor, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a *Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.